UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                              :
ASA COLLEGE, INC.,                                            :
                                                              :
                                      Petitioner,             :
                                                              :
                 -v-                                          :            24 Civ. 2991 (JPC)
                                                              :
MID-ATLANTIC REGION COMMISSION ON                             :            OPINION AND ORDER
HIGHER EDUCATION d/b/a MIDDLE STATES                          :
COMMISSION ON HIGHER EDUCATION,                               :
                                                              :
                                      Respondent.             :
                                                              :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        This case arises from a dispute between ASA College, Inc. ("ASA"), a private educational

institution, and the Mid-Atlantic Region Commission on Higher Education, doing business as the

Middle States Commission on Higher Education ("MSCHE"), an agency responsible for

overseeing ASA's accreditation.  In early 2023, MSCHE terminated ASA's accreditation and then

closed ASA's appeal of that determination after ASA represented that it was ceasing operations.

ASA challenged MSCHE's withdrawal of its accreditation in arbitration, alleging violation of due

process.  After the arbitrator found in favor of MSCHE, ASA moved this Court to vacate the

arbitration award, and MSCHE cross-moved to confirm the award.  Because no grounds exist

under prevailing law to modify or vacate the award, the Court confirms the award.

        Separately, MSCHE has moved for a preliminary injunction, invoking *res judicata* to

enjoin ASA from pursuing a second arbitration involving MSCHE's withdrawal of ASA's

accreditation.  Questions of preclusion are properly left to the arbitrator in the second arbitration,

however, and the Court therefore denies MSCHE's motion for injunctive relief.

## I. Background

### A. Underlying Facts[1]

ASA is a private college that operated two campuses in New York City at least until the fall of 2022 and operated a third campus in Hialeah, Florida, which closed its doors on December 31, 2022. 1st Johnson Decl., Exh. 3 ("Hr'g Tr.") at 44:9-48:8; *see* Award at 4. MSCHE was responsible for ASA's accreditation.[2] Hr'g Tr. at 47:4-11; *see* Award at 4. Accreditation by MSCHE requires adherence to its *Standards for Accreditation and Requirements of Affiliation* ("Standards for Accreditation"). 1st Cohen Decl., Exh. 1 at 97-115 ("Standards for Accreditation"); Hr'g Tr. at 191:21-194:15; *see* Award at 2. Requirements under the Standards for Accreditation include, among other things, that the institution is licensed by the state, that it complies with all MSCHE policies, that it is financially responsible and sustainable, and that the "institution is operational, with students actively enrolled in its degree programs." Standards for Accreditation at 2-3.

From at least late 2021 through 2022, MSCHE worked to address several issues concerning ASA's compliance with the accreditation standards. Award at 4. In October 2021, MSCHE warned ASA that its accreditation may soon be in jeopardy, and by December of that year, MSCHE advised ASA that it was in danger of losing its accreditation for failure to comply with several Standards for Accreditation. *Id.* at 4-5. Also in December 2021, MSCHE required ASA to submit

---

[1] The following facts are drawn from the parties' submissions, including their attorney's declarations, Dkts. 3 ("1st Johnson Decl."), 11-1 ("1st Cohen Decl."), 13-1 ("2nd Johnson Decl."), 17-1 ("3rd Johnson Decl."), and the attached exhibits, including the arbitrator's Final Award, 1st Johnson Decl., Exh. 6 ("Award").

[2] "Accreditation means the status of public recognition that an accrediting agency grants to an educational institution or program that meets the agency's standards and requirements." 34 C.F.R. § 602.3.

a "teach-out plan"[3] consistent with MSCHE policies and as required by 34 C.F.R. § 602.24(c), but MSCHE found ASA's initial proposed teach-out plan deficient and found a second proposed plan deficient as well. *Id.* at 5. MSCHE then, in March 2022, directed ASA to show cause why its accreditation should not be withdrawn, asking ASA to prove its compliance with several accreditation standards. *Id.* After lifting ASA's show cause status in June 2022, MSCHE reimposed that status in October 2022, again requiring ASA to show compliance with the Standards for Accreditation. *Id.* ASA submitted a show cause report and supplemental information report on November 1, 2022, and submitted a teach-out plan the following day. *Id.*; *see generally* 1st Johnson Decl., Exh. 2 ("Notification") at 1-2 (discussing history of ASA's "recent non-compliance accrediting activities" and acknowledging MSCHE's receipt of the show cause report, supplemental information, and the teach-out plan).

On November 11, 2022, MSCHE sent ASA a *Notification of Adverse Action* (the "Notification"), informing ASA of MSCHE's intent to withdraw ASA's accreditation. Notification at 1. In the Notification, MSCHE identified myriad ways in which ASA had failed to comply with the Standards for Accreditation, and required ASA to submit "an implementable and comprehensive teach-out plan," notify "current and prospective students of the withdrawal of accreditation effective March 1, 2023," and post "information regarding the institution's accreditation status with MSCHE on its website." *Id.* at 1-3; Hr'g Tr. at 55:10-56:16. The Notification also informed ASA that the school would

> remain[] accredited for the sole purpose of implementing the teach-out plan and teach-out agreements until the completion of any appeal or the effective date of withdrawal or denial, whichever is first, so long as the following conditions are

---

[3] A "teach-out plan" is a "written plan developed by an institution that provides for the equitable treatment of students if an institution, or an institutional location that provides 100 percent of at least one program, ceases to operate or plans to cease operations before all enrolled students have completed their program of study." 34 C.F.R. § 600.2.

met: (1) the institution does not enroll new students, (2) the institution does not market or recruit new students, and (3) the institution maintains a clear and accurate statement about its accreditation phase and accreditation status for the public on its website.

Notification at 3.

ASA timely submitted a notice of appeal, after which MSCHE proposed holding the appeal hearing between March 20 and March 31, 2023. Hr'g Tr. at 58:16-59:2, 60:4-8, 63:6-10; *see* Award at 6. ASA President Jose Valencia responded that the "ASA representatives" would consent to "any date from March 20 [to] March 30, 2023." Award at 6 (internal quotation marks omitted); Hr'g Tr. at 60:4-15. At that time, ASA knew that "the accreditation would be pushed to . . . the last day of the appeal," even though the Notification advised ASA that the accreditation withdrawal would take effect on March 1, 2023. Hr'g Tr. at 60:9-15; Notification at 1 ("To note that the date accreditation will cease will not extend beyond March 1, 2023, but will occur earlier if any conditions set by [MSCHE] are not met."); *see* Notification at 3 (advising ASA that it would "retain[] its Accredited status until the completion of any appeal or the effective date of the withdrawal or denial, whichever is first"). Later, however, in early January 2023, ASA asked MSCHE to schedule the appeal hearing prior to February 24—the end of ASA's Fall Semester— which request MSCHE denied on January 6, explaining that such an accelerated timeline was not possible under MSCHE's procedures. 2d Johnson Decl., Exh. 7 (January 6, 2023 letter from MSCHE to Valencia denying ASA's request to set the accreditation appeal hearing prior to February 24, 2023); Hr'g Tr. at 60:16-61-16, 62:23-63:5; *see* Award at 7-8.

On January 11, 2023, President Valencia wrote to all active ASA students, informing them that MSCHE had withdrawn the school's accreditation and that the "2022 Fall semester, which will end February 22, 2023, appears to be [ASA's] last semester." Hr'g Tr. at 136:8-20; *see* Award at 8 (internal quotation marks omitted). This representation was consistent with information

provided in a Frequently Asked Questions document issued by ASA on November 16, 2022, which advised students that "ASA will cease its operations as of March 2023" and "[t]he last day of classes is February 24, 2023."  3d Johnson Decl., Exh. 1 (forwarded November 16, 2022 email from ASA to students); Hr'g Tr. at 134:10-135:19; *see* Award at 8.  Around that time, MSCHE wrote to ASA, advising that "[g]iven that ASA's owner does not have the resources to provide funds for the current academic term (Fall 2022), it appears that ASA College's closure is imminent," and warning ASA that its "closure may also require forfeiture or the withdrawal of the appeal currently in process."  2d Johnson Decl., Exh. 8 (January 3, 2023 letter from MSCHE to Valencia); *see* Award at 9.  Around this time, MSCHE also noted that it had heard from the New York State Education Department ("NYSED") that ASA planned to close after the end of the fall 2022 semester.  Award at 9; *see* Hr'g Tr. at 146:7-21.

On January 23, 2023, MSCHE transmitted a formal request for information to ASA, to which ASA responded the next day.  1st Johnson Decl., Exh. 3 ("Response to RFI") at 1; *see* Award at 9.  In its response, ASA informed MSCHE that it was not able to pay the December 23, 2022 payroll nor the January 20, 2023 payroll.  Response to RFI at 1; Hr'g Tr. at 127:9-14.  ASA acknowledged that it was "experiencing financial difficulties"—explaining that the U.S. Department of Education had been withholding funding and that ASA already had sold all available assets and was unable to procure more loans due to its high outstanding debt—and that these financial difficulties negatively affected "its educational services" as some teachers had left after the missed payrolls.  Response to RFI at 1; Hr'g Tr. at 126:21-127:21.  Also in its response, ASA informed MSCHE that "the Fall semester, which ends on February 24, 2023, will be the last semester for ALL campuses."  Response to RFI at 2; Hr'g Tr. at 127:22-128:10.  Two days later, on January 26, 2023, MSCHE informed ASA that MSCHE was "treating information . . . sent on

January 24, 2023, as notification of institutional closure." 2d Johnson Decl., Exh. 11 (January 26, 2023 email from MSCHE to Valencia); Hr'g Tr. at 71:10-18, 144:5-19; *see* Award at 10 (alteration adopted and internal quotation marks omitted).

ASA did not respond in writing to MSCHE's correspondence for one week. *See* Hr'g Tr. at 144:23-145:24; 2d Johnson Decl., Exh. 16 (February 3, 2023 letter from Valencia to MSCHE). MSCHE had a pre-planned Commission Liaison Visit with ASA on February 3, 2023. Hr'g Tr. at 92:5-9. About two hours before that visit, ASA wrote to MSCHE claiming that "ASA will remain open after the fall semester" and that, as of that date, ASA's "Board ha[d] not considered closure." 2d Johnson Decl., Exh. 16 at 1; Hr'g Tr. 86:18-88:6, 96:17-97:10; *see* Award at 10 (internal quotation marks omitted). MSCHE did not discuss the content of that correspondence during its meeting with ASA. Hr'g Tr. at 95:19-96:8; *see* Award at 10-11. And three days later, on February 6, 2023, MSCHE notified ASA that on January 31, 2023, MSCHE had acknowledged receipt of ASA's closure on February 24, 2023, and notified ASA that MSCHE would consider the institution closed and no longer operational with students actively enrolled as of February 24, 2023. 2d Johnson Decl., Exh. 18 (February 16, 2023 letter from MSCHE to Valencia and the Chair of the Board at ASA); Hr'g Tr. at 99:6-14, 100:17-101:7; *see* Award at 11. MSCHE further informed ASA that that "[t]he institutional closure terminates ASA College's appeal." 2d Johnson Decl., Exh. 18; Hr'g Tr. at 100:8-16; *see* Award at 11.

ASA's semester ended on February 24, 2023, and its accreditation ceased being effective on March 1, 2023. Hr'g Tr. at 111:11-13; *see* Award at 12. The originally scheduled appeal hearing did not take place. *See* Hr'g Tr. at 366:13-367:22. Subsequently, in June 2023, NYSED revoked ASA's license to operate in New York, citing ASA's failure to comply with NYSED's standards and regulations. 1st Cohen Decl., Exh. 2; *see* Award at 12-13.

**B.    Arbitration**

Pursuant to the parties' Arbitration Agreement, 1st Johnson Decl., Exh. 5 ("Arbitration Agreement"), ASA initiated an arbitration on February 23, 2023—the day before the end of ASA's fall semester and less than one week before its accreditation was set to expire.  Award at 2.  ASA sought emergency relief "prohibiting MSCHE from withdrawing ASA's accreditation and forcing ASA to close."  *Id.* (internal quotation marks omitted).  The emergency arbitrator concluded that "MSCHE did not violate either its own policies or due process" and denied relief.  *Id.* (internal quotation marks omitted).  The arbitration then proceeded before Stephen P. Sonnenberg (the "Arbitrator"), who held a hearing on November 9, 2023, at which former ASA President Valencia and MSCHE President Dr. Heather Perfetti testified.  *Id.* at 3, 22.  The Arbitrator issued the Award on January 2, 2024, dismissing ASA's claims that MSCHE violated ASA's due process rights.  *Id.* at 22.

**C.    Procedural History**

On April 19, 2024, ASA petitioned this Court to vacate the Award, and filed a motion to the same effect.  Dkts. 1, 2, 4 ("ASA Mot.").  MSCHE opposed ASA's motion on May 10, 2024, Dkt. 11, and ASA replied on May 31, 2024, Dkt. 13 ("ASA Reply").  On August 23, 2024, pursuant to MSCHE's request, the Court construed MSCHE's opposition to ASA's motion to vacate the Award as a cross-motion to confirm the Award, and permitted additional briefing on the motion to confirm.  Dkt. 16.  ASA filed its opposition on September 6, 2024, Dkt. 17 ("ASA Opp."), and MSCHE filed its reply on September 20, 2024, Dkt. 18.

On December 23, 2024, MSCHE moved for a preliminary injunction.  Dkt. 19, 20 ("PI Mot.").  According to MSCHE, ASA had initiated a new arbitration proceeding against MSCHE (the "Second Arbitration") "asserting due process and other claims based on MSCHE's handling

of the process leading up to ASA's loss of accreditation." PI Mot. at 1. Arguing that the claims in the Second Arbitration would be "precluded . . . under the doctrine of *res judicata* if and when this Court enters judgment confirming the [Award]," MSCHE moved to preliminarily enjoin ASA from pursuing the Second Arbitration. *Id.* MSCHE "contemporaneously fil[ed] an emergency request with [the arbitrator in the Second Arbitration] to stay the Second Arbitration pending the resolution of the confirmation motion pending [before the Court]." *Id.* at 3. ASA opposed MSCHE's motion for a preliminary injunction on January 9, 2025. Dkt. 24 ("PI Opp.").

## II. Motions to Vacate and Confirm Arbitration

The Court first addresses ASA's motion to vacate the Award and MSCHE's cross-motion to confirm the Award.

### A. Legal Standard

When reviewing an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C § 1 *et seq.*, a court "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). "[A]rbitral awards and the arbitral process" deserve "strong deference." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The FAA sets out four explicit grounds to vacate an arbitration award: (1) "the award was procured by corruption, fraud, or undue means," (2) the arbitrators showed "evident partiality or corruption," (3) "the arbitrators were guilty of misconduct" that prejudiced "the rights of any party," or (4) "the arbitrators exceeded their

powers." 9 U.S.C. § 10(a).  Besides these four explicit bases, the Second Circuit has put a "judicial gloss on the specific grounds for vacatur of arbitration awards" in the FAA and recognized that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (cleaned up); *accord Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021).

These stringent standards require a petitioner to "clear a high hurdle" to vacate an arbitration award.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  A petition to vacate an arbitration award is "not an occasion for *de novo* review of an arbitral award." *Scandinavian Reinsurance Co.*, 668 F.3d at 71 (quotations omitted).  Instead, the review is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Id.* at 71-72 (quotations omitted).

## B.    Motion to Vacate

The Court begins with ASA's motion to vacate the Award.  ASA argues only one ground for this Court to vacate the Award: that the Arbitrator manifestly disregarded the law governing the due process owed to ASA in MSCHE's proceedings.[4]  ASA Mot. at 6-10.

---

[4] In ASA's opposition to MSCHE's cross-motion to confirm the Award, ASA suggests that the "arbitration policy did not squarely apply to a challenge to [MSCHE's] dismissal" of ASA's appeal.  ASA Opp. at 2-4; *see id.* at 2 (contending that "it is arguable whether a dispute over the dismissal truly was subject to arbitration").  In support of this argument—which was not raised in ASA's motion to vacate the Award—ASA cites to the section of the Arbitration Agreement that governs "any dispute involving a final adverse action," Arbitration Agreement at 1, and notes the absence of review of the record and a decision by an Appeal Panel.  *See* ASA Opp. at 2-3.  But that provision does not cover the arbitration here because it was not a "post-appeal dispute[]." Arbitration Agreement at 1.  ASA's claim that MSCHE violated due process was subject to arbitration under the catchall provision of the Arbitration Agreement, which provides that "[a]ll claims, disputes and controversies (whether past, present or future) arising out of or related to the relationship between an institution and the Commission, other than disputes that are the subject of the foregoing *Arbitration of Disputes Concerning Final Adverse Actions Procedures*, will be submitted to binding arbitration before the Arbitration Administrator pursuant to the applicable rules established by the Arbitration Administrator."  *Id.* at 7.

As an initial matter, the Court's review "under the doctrine of manifest disregard is severely limited." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (internal quotation marks omitted). Vacatur of an arbitration award on this ground requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002). Indeed, a reviewing court is compelled to enforce an arbitration award, "despite [the] court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted).

Under this exacting standard, a petitioner "seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Seneca Nation of Indians*, 988 F.3d at 625-26 (internal quotation marks omitted). Accordingly, "to succeed in challenging an award under the manifest disregard standard," the petitioner must show "that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at 626 (internal quotation marks and citation omitted). "In addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke Corp.*, 304 F.3d at 209).

### 1.    The Arbitrator's Decision

Before turning to ASA's arguments in favor of vacating the Award, the Court describes how the Arbitrator came to his conclusion. The Arbitrator began by reciting the standards that govern ASA's due process rights under 34 C.F.R. § 602.25:

> In sum, to ensure due process, the Code of Federal Regulations requires accrediting agencies to set clear standards; identify deficiencies at particular institutions in writing; provide those institutions with an opportunity to respond and comply within a reasonable time frame, set by the agency; permit appeal to an independent panel; on appeal, permit introduction of significant and material information relevant to an institution's finances, if the institution is threatened with adverse action solely on account of its finances, and the financial information was not available to the institution after the accreditation decision that led to the appeal; and the appeal panel transmits its final decision, with reasons, in writing.

Award at 13 (quoting *Sojourner-Douglass Coll. v. Middle States Ass'n of Colleges & Sch.*, No. Civ. A. ELH-15-01926, 2015 WL 5091994, at *6 (D. Md. Aug. 27, 2015)).  He acknowledged that, as pointed out by ASA in its briefing, some Circuits have recognized "a common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members."  *Id.* (quoting *Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015)).  But the Arbitrator noted that the very case cited by ASA also recognized, "that such a common law duty exists does not authorize courts to undertake a wide-ranging review of decisionmaking by accreditation agencies," and that "elementary principles of administrative law call for significant, though not total, deference to decisionmaking by accreditation agencies."  *Id.* at 14 (quoting *Pro. Massage Training Ctr.*, 781 F.3d at 169).  In sum, the Arbitrator concluded that he was to consider only "whether the decision of an accrediting agency such as [MSCHE] [was] arbitrary and unreasonable or an abuse of discretion and whether the decision [was] based on substantial evidence."  *Id.* (quoting *Pro. Massage Training Ctr.*, 781 F.3d at 171).  And he placed the burden of proof on ASA to prove such arbitrariness or unreasonableness by a preponderance of the evidence.  *Id.*  ASA challenges neither the Arbitrator's deferential standard of review nor his allocation of the burden of proof.

In applying those standards, the Arbitrator considered and rejected ASA's argument that the lack of an appeal hearing was a *per se* violation of ASA's due process rights.  He reasoned that

11

the "[r]ecord is clear that MSCHE initially permitted and facilitated ASA's appeal, began assembling a record for the appeal, going so far as to set dates for the hearing in March 2023, to which ASA initially agreed." *Id.* at 15. And he rejected the "several respects" in which "ASA fault[ed]" MSCHE's conduct thereafter. *Id.* The Arbitrator concluded, for example, that MSCHE's refusal to reschedule the hearing to an earlier date in February 2023 did not violate ASA's due process rights, noting that "President Valencia's testimony render[ed] questionable ASA's assertion that it decided to end classes at the end of the Fall semester because MSCHE set March 1, 2023, as the withdrawal of accreditation date," and there was no "evidence to suggest that MSCHE incorrectly or unreasonably relied on procedural timeframes . . . when it denied ASA's request to advance the hearing date." *Id.* at 16.

After weighing all the evidence before him, the Arbitrator also wholesale rejected ASA's argument that MSCHE "improperly and incorrectly determined that ASA was closing." *Id.* at 17 (internal quotation marks omitted). He determined that MSCHE did not deprive ASA of due process by "refusing to discuss its February 3rd written response during the same-day pre-planned Commission Liaison Visit" because "President Valencia did not provide any meaningful explanation as to why he did not convey ASA's written response regarding a critical issue substantially—even one day—prior to the meeting," and "[t]here was nothing untoward about Dr. Perfetti and senior leadership needing more time to consider ASA's just-received response, to confer internally, and to decide how to respond regarding a matter of importance." *Id.* at 17-18. Similarly, there was no evidence "that MSCHE thereafter refused to consider the points President Valencia advanced in his February 3, 2023, written response"; rather, "[s]everal exhibits evidence[d] that MSCHE leadership considered the implications of ASA's response, ultimately deciding that ASA's ability or intent to remain open was unchanged." *Id.* at 18. And President

Valencia's testimony at the hearing did "not contradict Dr. Perfetti's reasoning or MSCHE's rationale for concluding that President Valencia's February 3rd response did not warrant changing MSCHE's determination regarding institutional closure." *Id.*

The Arbitrator found that other evidence, too, supported MSCHE's conclusion that ASA was closing. For example, the Arbitrator cited Dr. Perfetti's testimony that ASA's teach-out plan "did not support a plan to continue classes after February 24, 2023." *Id.* at 19; *see* Hr'g Tr. at 224:5-24, 251:8-13. The Arbitrator explained that, in a formal submission to MSCHE, President Valencia had advised MSCHE that "the Fall semester, which ends on February 24, 2023, will be the last semester for ALL campuses." Award at 9 (internal quotation marks omitted). ASA had also informed its students that it "will cease its operations as of March 1, 2023," and that the "last day of classes is February 24, 2023." *Id.* at 8 (internal quotation marks omitted). After weighing the extensive evidence before him, the Arbitrator found that "President Valencia's statement (and testimony) that ASA had no intention to close is contradicted by ASA's prior statements and MSCHE had ample basis to doubt the credibility of the representations in his February 3, 2023, correspondence." *Id.* at 20-21.

The Arbitrator thus concluded that because ASA would have been closed by the scheduled date of the appeal hearing, MSCHE was justified in terminating the appeal. ASA's future status was "not consistent with Requirement of Affiliation '2,'" *id.* at 19—that the "institution is operational, with students *actively enrolled* in its degree programs," Standards for Accreditation at 2 (emphasis added). In other words, the school's "closure would render ASA ineligible for accreditation under MSCHE's standards." Award at 20. As such, the Arbitrator concluded, MSCHE did not violate ASA's due process rights: MSCHE would not have been able to accredit ASA, even after the scheduled appeal hearing (had it happened), because ASA would have been

closed. *Id.*; *see also id.* at 9 (quoting MSCHE's January 3, 2023 letter to ASA advising that it "[would] continue with the process of appeal" despite evidence that "ASA College's closure [was] imminent," but warning ASA that its "closure may also require forfeiture or the withdrawal of the appeal currently in process"). The Arbitrator also concluded that MSCHE had provided ASA with ample opportunity to be heard regarding its pending closure: "MSCHE had requested, on multiple occasions during the preceding year (and earlier), extensive information regarding ASA's operations and plans." *Id.* at 19; *see id.* at 19-20 (listing the requests made "[d]uring January 2023 alone"). At bottom, the Arbitrator reasoned that the termination of the appeal did not violate ASA's rights due to the lack of MSCHE's ability to accredit ASA combined with ASA's ample notice and opportunity to be heard prior to the scheduled hearing.

### 2.    ASA's Arguments

ASA points to five ways in which the Arbitrator manifestly disregarded the law governing ASA's due process rights. The Court addresses each in turn.

First, ASA argues that, under 34 C.F.R. § 602.25(f), it was unqualifiedly "entitled, upon written request, 'to appeal any adverse action prior to the action becoming final,'" and that "'[t]he appeal must take place at a hearing before an appeals panel.'" ASA Mot. at 7 (quoting 34 C.F.R. § 602.25(f)).[5] According to ASA, the Arbitrator manifestly disregarded Section 602.25(f)'s appeal

---

[5] Pursuant to 34 C.F.R. § 602.25(f), the accrediting agency must:

(f) Provide[] an opportunity, upon written request of an institution or program, for the institution or program to appeal any adverse action prior to the action becoming final.

  (1) The appeal must take place at a hearing before an appeals panel that—

    (i) May not include current members of the agency's decision-making body that took the initial adverse action;

    (ii) Is subject to a conflict of interest policy;

requirement: ASA was not afforded a hearing before an appeals panel prior to its accreditation being terminated, yet the Arbitrator did not find its due process rights to be violated. *Id.* at 6-10.

ASA fails to show that the Arbitrator "willfully flouted" Section 602.25(f) "by refusing to apply it." *Seneca Nation of Indians*, 988 F.3d at 626 (internal quotation marks omitted). The Arbitrator recited the relevant legal principles, which entailed quoting a case that cited Section 602.25(f), and applied those principles to the dispute before him. Award at 13; *see id.* at 13-14 (noting that the "Code of Federal Regulations requires accrediting agencies to . . . permit appeal to an independent panel" (internal quotation marks omitted)). When addressing this same argument by ASA, the Arbitrator reasoned that MSCHE did not violate Section 602.25(f) because the "[r]ecord [was] clear that MSCHE initially permitted and facilitated ASA's appeal." *Id.* at 15; *see id.* at 21 ("Accordingly, and for all the reasons stated above, I do not find that MSCHE's decision to terminate ASA's appeal was arbitrary, unreasonable or unsupported by substantial evidence. I do not find that ASA satisfied its burden of showing by a preponderance of evidence

---

(iii) Does not serve only an advisory or procedural role, and has and uses the authority to make the following decisions: To affirm, amend, or remand adverse actions of the original decision-making body; and

(iv) Affirms, amends, or remands the adverse action. A decision to affirm or amend the adverse action is implemented by the appeals panel or by the original decision-making body, at the agency's option; however, in the event of a decision by the appeals panel to remand the adverse action to the original decision-making body for further consideration, the appeals panel must explain the basis for a decision that differs from that of the original decision-making body and the original decision-making body in a remand must act in a manner consistent with the appeals panel's decisions or instructions.

(2) The agency must recognize the right of the institution or program to employ counsel to represent the institution or program during its appeal, including to make any presentation that the agency permits the institution or program to make on its own during the appeal.

34 C.F.R. § 602.25(f).

that MSCHE violated 34 C.F.R. § 602.25.").  The Arbitrator noted that MSCHE in fact "began assembling a record for the appeal, going so far as to set dates for the hearing in March 2023, to which ASA initially agreed."  *Id.* at 15.  It was only after ASA asserted that it would end classes at the end of the fall 2022 semester that MSCHE dismissed ASA's appeal, for the reason that MSCHE can only accredit an "operational" school with "actively enrolled" students.  *Id.* at 19-21. Even if the Court were to disagree with the Arbitrator's analysis, there is far more than "a *barely colorable justification*" supporting his conclusion that MSCHE providing ASA with the opportunity for an appeal—albeit with the condition that the school remain operational—satisfied its due process obligations under Section 602.25(f).  *T.Co Metals*, 592 F.3d at 339 (internal quotation marks omitted).

ASA's second argument contends that the Arbitrator manifestly disregarded the law (which law precisely is unclear) when he found MSCHE's understanding that ASA's closure was imminent to be supported by substantial evidence.  ASA Opp. at 6-11.  In particular, ASA claims that some of Dr. Perfetti's hearing testimony was "false," and that the Arbitrator was wrong to rely on it.  *Id.* at 9-10.  This argument asks the Court to disturb the Arbitrator's conclusion by reweighing the evidence presented at the arbitration.  Federal courts, however, "may not conduct a reassessment of the evidentiary record" and vacate an award merely because "it runs contrary to 'strong' evidence favoring the party bringing the motion to vacate the award."  *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (internal quotation marks omitted).  "Instead, whatever the weight of the evidence considered as a whole, if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."  *Id.* (alteration adopted and internal quotation marks omitted); *see also id.* ("[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award. . . .  To the extent that a federal court

16

may look upon the evidentiary record of an arbitration proceeding at all, it may do so *only* for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law." (internal citation omitted)).  Here, there certainly is a colorable basis in the record for the Arbitrator's conclusion that MSCHE's understanding of ASA's imminent closure was supported by substantial evidence.  The evidence includes, but is not limited to, President Valencia unequivocally informing MSCHE that "the Fall semester, which ends on February 24, 2023, will be the last semester for ALL campuses," Response to RFI at 2; Hr'g Tr. at 127:22-128:10; *see* Award at 9, and ASA advising its students that it would "cease its operations as of March 1, 2023," with "[t]he last day of classes [on] February 24, 2023," 3d Johnson Decl., Exh. 1 (forwarded November 16, 2022 email from ASA to students); Hr'g Tr. at 134:10-135:19; *see* Award at 8.  These facts provide a colorable basis to support the Arbitrator's conclusion that substantial evidence supported MSCHE's determination that ASA was closing before the scheduled hearing.  *See Westerbeke Corp.*, 304 F.3d at 214 ("The [A]rbitrator's factual findings . . . are not subject to judicial challenge, particularly on [the Court's] limited review of whether the [A]rbitrator manifestly disregarded the law.").

Third, and somewhat related, ASA argues that MSCHE "made its withdrawal of accreditation 'final' at the outset" and that the Arbitrator "manifestly disregarded the finality requirement" of Section 602.25(f).  ASA Reply at 2-10; *see* 34 C.F.R. § 602.25(f) (requiring an accrediting agency to provide "an opportunity . . . for the institution or program to appeal any adverse action *prior to the action becoming final*" (emphasis added)).  In essence, ASA argues that MSCHE forced ASA to close by imposing upon it several restrictions in the Notification, which informed ASA of the agency's intent to withdraw accreditation.  ASA Reply at 2-10; *see also* ASA

Mot. at 8 ("MSCHE made a unilateral determination that ASA College intended to close."); ASA Opp. at 11 ("From November 11, 2022 and forward, it was MSCHE's decision for ASA to close."). ASA claims that the effect of the restrictions was to render the withdrawal of accreditation "final" even before MSCHE's appeal. As discussed above, however, MSCHE was preparing for the appeal to occur in March 2023, *see* Hr'g Tr. at 60:4-8, 63:6-10, to which ASA initially agreed, yet warned ASA that its "closure may also require forfeiture or the withdrawal of the appeal currently in process," 2d Johnson Decl., Exh. 8 (January 3, 2023 letter from MSCHE to Valencia); *see* Award at 9, and the Arbitrator did not manifestly disregard the law when he concluded that MSCHE's dismissal of the appeal upon ASA's notice of closure did not violate ASA's due process rights.

More to the point, as the Arbitrator pointed out, none of MSCHE's restrictions forced ASA to shut its doors. Although ASA argues that the Notification "informed ASA that its accreditation was being withdrawn as of March 1, 2023, without regard to the effect of an appeal," ASA Reply at 3, the Arbitrator found that "President Valencia's testimony [at the arbitration hearing] established he understood when he agreed on ASA's behalf to the March 2023 hearing that the accreditation would be pushed to . . . the last day of the appeal," Award at 16 (internal quotation marks omitted)); *see* Hr'g Tr. at 60:9-15. Moreover, contrary to ASA's assertions, it was not forced to close because of MSCHE's direction that ASA not "offer instruction other than for a teach-out of existing students." ASA Reply at 6. As the Arbitrator noted, Dr. Perfetti testified that the documents ASA submitted, including its teach-out plan, did not support a plan to continue classes after February 24, 2023. Hr'g Tr. at 224:5-24, 251:8-13; *see* Award at 19.

Fourth, in opposing MSCHE's cross-motion to confirm the Award, ASA argues that "mootness does not justify MSCHE's dismissal of ASA's appeal." ASA Opp. at 16-18. ASA

argues that the Arbitrator manifestly disregarded case law holding that "businesses which have been forced into closure by challenged agency action but which intend to resume operations if they prevail in their challenges do not have moot claims." *Id.* at 16 (citing *White River Amusement Pub. Inc. v Town of Hartford*, 481 F.3d 163, 168 (2d Cir. 2007); *Clark v. City of Lakewood*, 259 F.3d 996, 1012 (9th Cir. 2001)).  The problem for ASA is that the Arbitrator was not presented with the question of whether ASA's appeal was moot under the case law now cited by ASA, nor did the Arbitrator opine on any mootness issues in resolving the arbitration.  The Arbitrator was presented with the question of whether MSCHE's decision to dismiss ASA's appeal violated the latter's due process rights—a question which the Arbitrator answered in the negative.  ASA therefore cannot show that the Arbitrator "knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation of Indians*, 988 F.3d at 626 (internal quotation marks and citation omitted).  Moreover, federal law governing mootness does not "control the outcome of" whether MSCHE violated ASA's due process rights.

Fifth, and finally, ASA argues that the Arbitrator manifestly disregarded the law governing ASA's due process rights by failing to realize that MSCHE's dismissal of ASA's appeal was inconsistent with MSCHE policy.  ASA Reply at 9.  But MSCHE's policy's governing "administratively defective" appeals does not cover a situation in which the school closes before the appeal hearing, rendering it ineligible for accreditation.  *See* 1st Cohen Decl., Exh. 1 at 51-64 (Appeals from Adverse Actions Procedures) at 6-7.  Moreover, in a letter from MSCHE to ASA referencing "[MSCHE] policy and procedures," MSCHE informed ASA that its "closure may also require forfeiture or the withdrawal of the appeal currently in process." 2d Johnson Decl., Exh. 8; *see* Award at 9.  Because ASA can identify no policy that MSCHE violated, it cannot show that

the Arbitrator acted with "egregious impropriety" by ignoring the reality that MSCHE violated its own policies. *Seneca Nation of Indians*, 988 F.3d at 626 (internal quotation marks omitted).

In sum, ASA has failed sustain its heavy burden of showing that the Arbitrator, in a demonstration of "egregious impropriety," "willfully flouted the governing law by refusing to apply it." *Id.* The Arbitrator reasonably concluded that ASA "was afforded ample notice that it was not in compliance with [MSCHE's] Standards and numerous opportunities to remedy identified deficiencies." *Pro. Massage Training Ctr.*, 781 F.3d at 174. The Court therefore denies ASA's motion to vacate the Award.

## C.    Motion to Confirm

Having denied ASA's request to vacate the Award under Section 10(a) of the FAA, the Court turns to MSCHE's request to confirm the Award under Section 9 of the FAA. The Court "must" grant this relief "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. And as described above, "there is no evidence in the record that the award was procured by corruption, fraud, or undue means; that the arbitrator was partial or corrupt; that the arbitrator was guilty of any misbehavior prejudicing the rights of any party; that the arbitrator exceeded or imperfectly executed his power; or that there was a manifest disregard of the law." *Sire Spirits, LLC v. Green*, No. 21 Civ. 7343 (JPC), 2022 WL 2003483, at *13 (S.D.N.Y. June 6, 2022) (cleaned up). The Court therefore grants MSCHE's motion to confirm the Award.

## III.    Motion for Preliminary Injunction

Lastly, the Court addresses MSCHE's motion for a preliminary injunction. MSCHE argues that a preliminary injunction is appropriate because "MSCHE is likely to succeed on the merits of its anticipated preclusion defense in the Second Arbitration." PI Mot. at 10. A final judgment

20

confirming the Award, MSCHE claims, "will foreclose ASA's claims" in the Second Arbitration, and "the Second Arbitration therefore impinges upon that pending judgment." *Id.* ASA responds that MSCHE would not succeed in its preclusion defense, but in any event the arbitrator in the Second Arbitration—and not this Court—"must decide whether to stay the arbitration proceedings based on any applicability of *res judicata* preclusion." PI Opp. at 6-12.

Even if MSCHE were likely to succeed in its preclusion defense to the Second Arbitration—a question on which the undersigned takes no view—the merits of that defense should be decided by the arbitrator assigned to the Second Arbitration. Second Circuit case law makes clear that "the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015).

In *National Union Fire Insurance Co. v. Belco Petroleum Corp. ("Belco")*, 88 F.3d 129 (2d Cir. 1996), the Second Circuit held that the preclusive effect of a related arbitration that had been confirmed by a state court was to be decided by the arbitrator in the pending arbitration, not the court. There, the underlying arbitration clause applied to "[a]ll disputes which may arise under or in connection with" the insurance policy at issue, language the Second Circuit found to be "[c]ertainly . . . broad enough to cover" the defendant's argument that certain of the plaintiff's claims were precluded by a prior arbitration award. *Id.* at 133. Reasoning that the defendant's "claim of preclusion [was] a legal defense to [the plaintiff's] claim" and thus "a component of the dispute on the merits," the Second Circuit held that the preclusion issue did not go to the "arbitrability"[6] of the dispute and, as a result, was a question left to the arbitrator. *Id.* at 135.

---

[6] "The 'arbitrability' of a dispute comprises the questions of (1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular

That same year, the Second Circuit decided *U.S. Fire Insurance Co. v. National Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996)—an appeal following a district court's decision to enjoin an arbitration as precluded by "an earlier judicial decision," *id.* at 814. The Second Circuit reversed, holding that arbitrators, not courts, were to decide whether collateral estoppel barred a party from arbitrating certain issues that had previously been resolved in litigation resulting in a federal judgment. *Id.* at 816-17. Consistent with *Belco*'s analysis, the court in *National Gypsum* reasoned that "a defense based on the issue-preclusive effect of [a] prior judgment is part of the dispute on the merits," and so it was within the ambit of the arbitration clause that covered "any disputed issues within the scope of the [contract]." *Id.* at 817.

The Second Circuit reaffirmed the holdings of *Belco* and *National Gypsum* in *Citigroup, Inc. v. Abu Dhabi Investment Authority*, where it considered "whether the All Writs Act, 28 U.S.C. § 1651(a), permits a federal district court to enjoin a second arbitration between parties to a contractual arbitration agreement based on what one party asserts is the claim-preclusive effect of a prior federal judgment confirming the results of the parties' earlier arbitration." 776 F.3d at 127. The Second Circuit held that "the 'extraordinary remedies' authorized by the All Writs Act cannot be used to enjoin an arbitration based on whatever claim-preclusive effect may result from the district court's prior judgment when that judgment merely confirmed the result of the parties' earlier arbitration without considering the merits of the underlying claims at issue in that arbitration." *Id.* "Given [the] holdings in *Belco* and *National Gypsum* that arbitrators are to resolve the claim-preclusive effect of an arbitration award confirmed by a state court and the issue-preclusive effect of a federal judgment," it was "a simple intuitive step" for the Second Circuit "to

_____

dispute sought to be arbitrated falls within the scope of the arbitration agreement. Under section 4 of the FAA these are the principal questions for the court to decide on a petition to compel arbitration." *Belco*, 88 F.3d at 135.

conclude that arbitrators should also decide the claim-preclusive effect of a federal judgment confirming an arbitral award." *Id.* at 131.  In that case, because the arbitration clause applied to "any dispute that arises out of or relates to the [investment agreement at issue], or the breach thereof," the Second Circuit easily concluded that it was "sufficiently broad enough to cover any dispute over whether [the defendant's] current claims were or could have been raised during the first arbitration." *Id.*

These cases squarely foreclose MSCHE's motion for a preliminary injunction.  The Arbitration Agreement between ASA and MSCHE provides that "[a]ll claims, disputes and controversies (whether past, present or future) arising out of or related to the relationship between an institution and [MSCHE] . . . will be submitted to binding arbitration."  Arbitration Agreement at 7.  This language is no less broad than the arbitration clauses in *Belco*, *National Gypsum*, and *Citigroup*, and clearly covers MSCHE's argument that ASA is precluded from raising certain claims in the Second Arbitration.  *Compare id. with Belco*, 88 F.3d at 133 (clause covered "[a]ll disputes which may arise under or in connection with" the insurance policy), *Nat'l Gypsum*, 101 F.3d at 817 (clause covered "any disputed issues within the scope of the [contract]"), *and Citigroup*, 776 F.3d at 131 (clause covered "any dispute that arises out of or relates to the [investment agreement at issue], or the breach thereof").  MSCHE's anticipated preclusion argument is a merits-based defense to ASA's claims, and, as such, is properly left to the arbitrator in the Second Arbitration to decide.  *See Citigroup*, 776 F.3d at 131.  MSCHE's motion for a preliminary injunction is therefore denied.

## IV.  Conclusion

For the foregoing reasons, the Court denies ASA's motion to vacate the Award and grants MSCHE's motion to confirm the Award.  The Court also denies MSCHE's motion for a

preliminary injunction.  The Clerk of Court is respectfully directed to enter judgment in favor of Respondent Mid-Atlantic Region Commission on Higher Education, terminate all pending motions, and close this case.

SO ORDERED.

Dated: February 10, 2025
       New York, New York

_____
JOHN P. CRONAN
United States District Judge